IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MIKE CHILINSKI,<br><br>    Petitioner,<br><br>vs.<br><br>STATE OF MONANA; TIM FOX, ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>    Respondents. | Cause No. CV 18-41-H-BMM-JTJ<br><br><br>ORDER FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

This case comes before the Court on pro se Petitioner Mike Chilinski's application for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Chilinski was directed to file an Amended Petition further explaining his claims. (Doc. 6.) Chilinski timely complied. (Doc. 8.)

For the reasons discussed herein, Mr. Chilinski's petition should be denied.

**I. Procedural History**

In 2011, the Jefferson County Sheriff's Office (JCSO) received multiple reports of dogs in poor health in a Malamute breeding operation located on

1

Chilinski's property.[1]  A JCSO deputy responded on several occasions to review the conditions, making videos of each visit.  Ultimately, a warrant to search the property was obtained, authorizing the JCSO deputy and "any and all agents he may require" to search Chilinski's property and seize "any and all dogs." The JCSO enlisted the assistance of volunteers from the Humane Society of the United States (Humane Society) in executing the search warrant.  The JCSO provided the Humane Society with videos of the deputy's site visits and sought guidance on the logistics of executing a warrant involving such a large number of animals.

Chilinski was charged in Montana's Fifth Judicial District, Jefferson County, with 92 counts of Animal Cruelty.  Chilinski was appointed two separate attorneys from the Office of the Public Defender who each represented him for a short time.  Ultimately, Betty Carlson was appointed as Chilinski's third and final trial attorney.  Carlson filed a motion to suppress and brief in support, seeking to suppress evidence obtained in the search of Chilinski's property on the basis that: (1) law enforcement officials lacked probable cause; (2) the warrant was unconstitutionally overbroad; (3) the participation of the Humane Society violated

---

[1] The following factual summary is taken from the Montana Supreme Court's opinion in *State v. Chilinski*, 2014 MT 206, 376 Mont. 122, 330 P. 3d 1169, and is presumed correct.  28 U.S.C. §2254(d)(2), (e)(1).  Chilinski does not present clear and convincing evidence to the contrary, thus, the Court adopts the factual recitations set forth by the state court.  See, *Vasquez v. Kirkland*, 572 F. 3d 1029, 1031, n.1 (9th Cir. 2009) ("We rely on the state appellate court's decision for our summary of the facts of the crime.").

the Fourth Amendment; and, (4) providing the videos of the site visits to the Humane Society violated Chilinski's right to privacy and constituted an impermissible dissemination material in violation of the Criminal Justice Information Act (CJIA).  Following a two-day hearing, the district court denied Chilinski's motion.

Ultimately, a jury convicted Chilinski of 91 counts of felony Cruelty to Animals.  On December 19, 2012, Chilinski was sentenced to serve 30 years with the Montana Department of Corrections with 25 of those years suspended.

Chilinski filed a direct appeal challenging the denial of his motion to suppress.  *State v. Chilinski*, 2014 MT 206, 376 Mont. 122, 330 P. 3d 1169 (Mont. Aug. 5, 2014).  In relation to Chilinski's Fourth Amendment claims, the Court determined that the search warrant was not unconstitutionally overbroad, because the warrant "particularly described what was to be seized," given that under the circumstances Chilinski himself was unsure of the exact number of dogs he owned. *Chilinski*, ¶ 22.  Next, the Court held that the volunteers lawfully aided in the execution of the search warrant.  More specifically, the Court determined the case upon which Chilinski relied involved reporters accompanying police for "private purposes,"  whereas the Humane Society volunteers involved in Chilinski's case "provided invaluable aid in collecting and inventorying evidence under the direct supervision of law enforcement." *Id.*, ¶¶ 23-24.  In relation to Chilinski's

argument that the dissemination of the video to the Humane Society volunteers violated his right to privacy and the CJIA, the Court held, "to the extent there was confidential criminal justice information disseminated, the volunteers were authorized by law [pursuant to the search warrant] to receive such information in order to safely and timely execute the warrant." *Id*. at ¶ 26. The Montana Supreme Court affirmed Chilinski's convictions.

On March 8, 2016, Chilinski filed a petition for postconviction relief with the district court, alleging ineffective assistance of counsel and failure of the state to disclose material evidence. The district court determined Chilinski's petition was barred under Montana law and that he had failed to establish he received ineffective assistance of counsel. Chilinski's petition was dismissed. See, Chilinski v. State, DC-2016-24, Or. (Sept. 14, 2016).[2]

Chilinski filed a timely notice of appeal; the Montana Supreme Court affirmed the dismissal of Chilinski's petition. See, *Chilinski v. State*, 2017 MT 137N, Or. (Mont. June 6, 2017).[3]

On August 1, 2017, Chilinski filed an application for review of his sentence with the Sentence Review Division of the Montana Supreme Court. (Doc. 5 at 4.)

---

[2] For purposes of clarity, the Clerk of Court will be directed to file a copy of the district court's order relief into this Court's record.

[3] All state court briefing and orders available at: https://supremecourtdocket.mt.gov (accessed August 1, 2019).

On March 9, 2018, the Division affirmed Chilinski's sentence. (Doc. 1-1).

## II. Chilinski's Claims

In his Amended Petition, Chilinski advances the following claims: (1) his sentence violates the 8th Amendment to the United States Constitution as it is both excessive and unconstitutional, (Doc. 8 at 3, ¶ 15(A)); (2) the search of his property and criminal trial violated Chilinski's right to due process, because the search was overbroad, the warrant was improper, and the trial court improperly contracted to have the Humane Society handle the search and associated costs, *Id*. at 4, ¶ 15(B); (3) the multiple searches and seizures were unreasonable and the act of providing video to the Humane Society was unlawful, *Id*. at 5, ¶ 15(C); and, (4) attorney(s) provided ineffective assistance of counsel (IAC) by not spending sufficient time on motions and not presenting all applicable law. *Id*. at 6, ¶ 15(D).

Chilinski asks this Court to dismiss his convictions or, in the alternative, order a new trial in which the purportedly tainted evidence is omitted. *Id*. at 7, ¶ 18.

## III. Analysis

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." The Court may also take judicial notice of

relevant state court records in determining whether to dismiss a petition. Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F. 3d 550, 551 (9th Cir. 2006). Additionally, it appears that Chilinski's first claim is procedurally defaulted, however, the Court will nonetheless consider the claim despite the procedural bar. See, *Franklin v. Johnson*, 290 F. 3d 1223, 1232 (9th Cir. 2002)("Procedural bar issues are not infrequently more complex that the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.")(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.").

### i. Claim 1- 8th Amendment Violation

The Eighth Amendment forbids the infliction of cruel and unusual punishments. To determine whether a punishment is cruel and unusual, courts are to "look beyond historical conceptions to 'the evolving standards of decency that mark the progress of a maturing society.'" *Graham v. Florida*, 560 U.S. 48, 58 (2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (additional citations omitted). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 24-25 (2003).

When an individual challenges a term-of-years sentence, the court is to first

consider all of the circumstances to determine whether the sentence is unconstitutionally excessive. *Graham*, 560 U.S. at 59. "[I]n applying the gross disproportionality principle courts must objectively measure the severity of a defendant's sentence in light of the crimes he committed." *Norris v. Morgan*, 622 F. 3d 1276, 1287 (9th Cir. 2010). "[I]n the rare case in which [this] threshold comparison…leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Harmelin v. Michigan*, 501 U.S. 975, 1005 (1991). If this comparison "validate[s] and initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual. *Id*.

As a preliminary matter, it appears that Chilinski has been on probationary and/or parole status since February 11, 2016.[4] While the Court acknowledges that the 25-year suspended sentence Chilinski received is certainly lengthy, the actual custodial sentence handed down was relatively short. Additionally, Chilinski has provided no information regarding what sentence other offenders in Montana or surrounding jurisdictions have received for felony Animal Cruelty. Thus, there is nothing before the Court from which to infer that Chilinski's sentence presents the

---

[4] See, Correctional Offender Network Search, https://app.mt.gov/conweb/Offender/3010955 (accessed August 2, 2019).

rare situation so "grossly disproportionate" as to offend Eighth Amendment notions.

Rather, Chilinski's argument turns on the application and constitutionality of state sentencing law. Chilinski seems to argue that the maximum sentence he could have received was two years, because that is the maximum sentence allowed for a second conviction of aggravated animal cruelty, and all of Chilinski's convictions arose "from the same trial." See, (Doc. 8 at 3, ¶ 15(A)(1)). Chilinski's challenge does not go directly to federal law, but rather to Montana's application of its own state sentencing law. But "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)(citations omitted). "[E]rrors of state law do not concern us unless they rise to the level of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F. 2d 1395, 1400 (9th Cir. 1989).

While the Court agrees with Chilinski that the maximum penalty under Montana law for a second or subsequent offense for Cruelty to Animals is 2 years, see MCA §45-8-211(2)(a), the statute also specifically provides that when "more than one animal is subject to cruelty to animals, each act may comprise a separate offense." MCA §45-8-211(2)(c). Thus, it appears that Chilinski's argument is baseless on its face.[5] But, even if this Court were to presume that somehow the

---

[5] Chilinski's offenses involved many animals. The Montana Supreme Court, in

State of Montana misapplied its own sentencing law, such an error does not warrant relief absent a showing of fundamental unfairness. *Christian v. Rhode*, 41 F. 3d 461, 469 (9th Cir. 1994). That is, Chilinski would have to show the claimed state sentencing error was "so arbitrary or capricious as to constitute an independent due process violation." *Richmond v. Lewis*, 506 U.S. 40, 50 (1992)(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Chilinski has made no such showing, at most he has demonstrated his disagreement with the application of Montana sentencing law. Accordingly, this claim should be denied.

### ii. Claims 2&3- Application of *Stone v. Powell* Doctrine

Chilinski's next two claims both seek to challenge various aspects of the searches and subsequent seizures that took place in his underlying criminal proceedings. He challenges the scope of the judge's jurisdiction in issuing the search warrant, the propriety of the warrant itself, and the involvement of volunteers from the Humane Society/civilian participants in the search and in

---

describing the dogs seized from Chilinski's property, observed:

> Of the 139 dogs examined, 35 were extremely underweight, 49 were underweight, and 30 showed signs of malnourishment. Many of the dogs had visible scars or other injuries, including missing or damaged ears. Several required immediate veterinary attention for distended abdomens, ear and eye infections, and open wounds…JCSO seized 139 adult dogs and 23 puppies.

*Chilinski*, 2014 MT 206, ¶ 12.

9

contributing to handle associated costs and care after the dogs were seized. See, (Doc. 8 at 4, ¶ 15(B)(1)). Additionally, Chilinski asserts the searches and seizures were not reasonable and that videotapes were sent to the Humane Society in violation of his rights and to his detriment. *Id*. at 5, ¶ 15(C)(1). Fourth Amendment challenges, however, generally are not cognizable in federal habeas proceedings. *Stone v. Powell*, 428 U.S. 465 (1976).

In *Stone*, the Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 494. The rule of *Stone* is based upon the principle that the exclusionary rule is "not a personal constitutional right" but is instead a practical way to deter police conduct that violates the Fourth Amendment." *Id*. at 486; see also, *Woolery v. Arave*, 8 F. 3d 1325, 1326 (9th Cir. 1993)(explaining the *Stone* doctrine is based upon the conclusion that when a Fourth Amendment claim has been adequately litigated, enforcing the exclusionary rule via writs of habeas corpus would not further the intended deterrent effect and educative purposes of the rule so as to warrant the corresponding negative effects such policy would have on judicial efficiency, comity, and federalism). Thus, if a petitioner had a "full and fair opportunity" to litigate his Fourth Amendment claims in the state court, *Stone* bars consideration of

the claim in federal habeas. "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Newman v. Wengler*, 790 F. 3d 876, 880 (9th Cir. 2015), citing *Ortiz-Sandoval v. Gomez*, 81 F. 3d 891, 899 (9th Cir. 1996). Petitioner bears the burden of establishing that the state courts did not consider his Fourth Amendment claim fully and fairly. *Mack v. Cupp*, 564 F. 2d 898, 901 (9th Cir. 1977).

    Thus, to receive consideration of his claims, Chilinski must demonstrate that the state courts did not provide him with a full and fair hearing. See, *Wollery*, 8 F. 3d at 1327-28. Trial counsel filed a suppression brief on Chilinski's behalf; the district court held a two-day hearing focused on Chilinski's attempt to suppress evidence obtained from the search of his property. Chilinski appealed the denial of his motion to the Montana Supreme Court; the Court addressed his claims on their merits. Thus, Chilinski utilized the avenues afforded to him under state law to present and litigate his Fourth Amendment claims.[6] Thus, Chilinski cannot

---

[6] As an aside, the Court would also note that Chilinski utilized the procedures available to him in his companion federal case, to challenge the seizure of marijuana plants and statements made which resulted in his federal charges. The federal matter stemmed from the underlying JCSO search of his property during the animal cruelty investigation. Following an October 10, 2012 suppression hearing, the Court determined the issuance and execution of three search warrants was proper; Chilinski's motions to suppress were denied. See, Or., *United States v. Chilinski*, 2012 U.S. Dist. LEXIS 152415, see also, (Doc. 8-2 at 1-12.)

11

establish that he was denied full and fair process. His disagreement with the state courts' decisions is not sufficient to warrant this Court's consideration. See e.g., *Moormann v. Schiro,* 426 F. 3d 1044, 1053 (9th Cir. 2005); see also, *Siriprongs v. Calderon*, 35 F. 3d 1308, 1321 (9th Cir. 1994)(rejecting a Fourth Amendment claim where the federal habeas petitioner's argument "goes not to the fullness and fairness of the opportunity to litigate the claim, but the correctness of the state court resolution, an issue which [*Stone*] makes irrelevant."). These claims should also be denied.

### iii.   Claim 4- IAC of Trial Counsel

In his federal petition, Chilinski asserts his trial attorney did not have adequate time to file proper motions and that none of his three attorneys chose to present law and argument which Chilinski provided them. Chilinski made the same claims in his postconviction petition. There, the district court determined Chilinski "fail[ed] to explain what his attorneys did or did not do that rendered their performance deficient." *Chilinski v. State*, DV-2016-24, Or. at 10. Additionally, while Chilinski faulted his attorneys for not presenting certain law and/or argument, he did not provide any analysis of the cases he independently located which would have caused the Montana Supreme Court to reach a different result. *Id*. The district court determined Chilinski's "conclusory allegations do not overcome the presumption that his attorneys' decision were unreasonable." *Id*.

Finally, the district court observed that while Chilinski's first two appointed attorneys did not file a motion to dismiss or suppress on his behalf, Carlson did, and Chilinski failed to establish that Carlson did an inadequate job of briefing the motion. *Id*.

As set forth above, in a memorandum opinion, the Montana Supreme Court summarily affirmed the denial of Chilinski's postconviction petition. See, *Chilinski*, 2017 MT 137N (Mont. June 6, 2017). Thus, the ineffective assistance of counsel (IAC) claim in Chilinski's Amended Petition was fairly presented to the state courts and denied on the merits. Accordingly, this Court's consideration of the claims is constrained by the applicable standard of review.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that a federal habeas court may not grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court," 28 U.S.C. § 2254(d), unless the claim's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by [this] Court," § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2); see also, *Johnson v. Williams*, 568 U.S. 289, 292 (2013). AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners, *Hurles v. Ryan*, 725 F. 3d 768, 777 (9th Cir. 2014), and

13

"demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards kick in." *Davis v Ayala*, __ U.S. ___, 135 S. Ct. 2187, 2198 (2015) (citations omitted).

Chilinski claims trial counsel provided ineffective assistance. The clearly established federal law for ineffective assistance of counsel claims was determined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the two-pronged framework of *Strickland*, the Sixth Amendment guarantee of the right to counsel in a criminal proceeding is violated if "counsel's performance was deficient" and "the deficient performance prejudiced the defense." 466 U.S. at 687.

Both prongs of the *Strickland* test must be satisfied to establish a constitutional violation; failure to satisfy either prong requires that an ineffective assistance claim be denied. *Id.*, at 697 (no need to address deficiency of performance if prejudice is examined first and found lacking); *Rios v. Rocha*, 299 F. 3d 796, 805 (9th Cir. 2002)("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.").

In assessing a claim that counsel's representation did not meet the constitutional minimum, the court is to "indulge in a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance." *Id.* at

14

689. Petitioner bears the burden of showing the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. See, *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

This Court's review of the state courts' determination that Chilinski's counsel did not perform deficiently is "doubly" deferential, because *Strickland* requires state courts to give deference to choices made by counsel, and AEDPA, in turn, requires this Court to defer to the determinations of state courts. *Harrington v. Richter*, 562 U.S. 86, 105 (2011)(quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

Much like he presented in the state courts, Chilinski provides this Court nothing more than conclusory allegations and does not to address what he believes to be unreasonable about the state courts' decisions. Additionally, to the extent that Chilinski disagrees with the legal argument and strategic decisions made by Carlson, *Strickland* makes clear that an attorney possesses wide latitude in making tactical decision, and such decisions, made after investigation of the law and facts relevant to plausible options are "virtually unchallengeable." *Strickland*, at 689-91. While Chilinski may have provided counsel with law and/or argument that he believed to be helpful, it would be reasonable and appropriate for trial counsel to make the ultimate decision regarding the law and argument to present to the jury and court. Thus, Chilinski has not established that his attorney(s) purported

failures equated to ineffective assistance, nor has he established that the state courts applied *Strickland* to his case in an objectively unreasonable manner. Accordingly, under AEDPA this Court must afford deference. The claim should be denied.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

Chilinski has not made a substantial showing that he was deprived of a constitutional right. This Court's review of the Fourth Amendment claims is precluded by *Stone v. Powell*. Chilinski's Eighth Amendment claim is lacking in

merit. And this Court must afford deference to the resolution of Chilinski's IAC claim under the doubly deferential standards required by the application of AEDPA and *Strickland*. Thus, there are no close questions and there is no reason to encourage further proceedings in this Court; reasonable jurists would find no reason to dispute this Court's procedural rulings. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## ORDER

For purposes of clarity, the Clerk of Court is directed to file a copy of the state district court order denying Chilinski postconviction relief, *Chilinski v. State*, DV-2016-24, into this Court's record.

## RECOMMENDATION

1. Chilinski's Amended Petition (Doc. 8) should be DENIED.

2. The Clerk of Court should be directed to enter judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Chilinski may object to this Findings and Recommendation within 14

days.[7]  28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Chilinski must immediately notify the Court of any change in his mailing address.</u>  Failure to do so may result in dismissal of his case without notice to him.

DATED this 6th day of August, 2019.

>  */s/ John Johnston*
>  John Johnston
>  United States Magistrate Judge

---

[7] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Chilinski is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.